UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIM CHENG,<br><br>*Plaintiff,*<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; and JPMORGAN CHASE BANK, N.A.,<br><br>*Defendants.* | Civil Action No: 1:20-cv-1636<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Jim Cheng, Plaintiff herein, by his attorneys, alleges and complains of Defendants as follows:

**PRELIMINARY STATEMENT**

1. This is an action for actual, statutory, punitive damages, injunctive relief, and statutory attorney's fees brought pursuant to the Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq.* ("FCBA"); the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"); the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), and the New York Fair Credit Reporting Act, New York General Business Law § 380, *et seq.* ("NY FCRA").

2. Jim Cheng ("Plaintiff" or "Mr. Cheng") is a victim of an obvious credit card billing error that has severely damaged his credit. Mr. Cheng is also known as Ji Dong Cheng.

3. Plaintiff used his Chase credit card to purchase a sandwich for $5.33 (the "Purchase") at a Subway restaurant (the "Vendor").

4. The Vendor is located in Queens County, New York.

5. The charge that appeared on Plaintiff's credit card for the Purchase was $675.60 (the "Overcharge").

1

6. Plaintiff repeatedly presented to Chase clear evidence of the Purchase, as well as clear evidence of his use of a $5.00 coupon that should have brought the purchase price to a mere 33 cents.

7. Notwithstanding this evidence, and without legitimate basis, Chase continues to demand that Plaintiff pay the Overcharge and to communicate the Overcharge as an unpaid and overdue obligation to the credit reporting agencies.

8. The credit reporting agencies, notwithstanding Mr. Cheng's disputes and without any legitimate basis (and notwithstanding the obvious nature of the error), continue to report the Overcharge adversely.

9. Plaintiff brings claims against JPMorgan Chase Bank, N.A. ("Chase" or the "Furnisher Defendant") for violations of the FCBA, TILA, New York General Business Law § 349 ("NYGBL § 349"), and for declaratory judgment.

10. Chase is also a "furnisher of information" to the three national consumer reporting agencies: Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union, LLC, (the "CRA Defendants").

11. Chase violated the FCRA by:

   a. failing to conduct a reasonable investigation of Plaintiff's dispute;

   b. failing to review all relevant information provided by consumer reporting agencies; and

   c. failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of 15 U.S.C. § 1681s-2(b)(1).

12. The CRA Defendants violated the FCRA (and analogous provisions of the NY FCRA) by:

    a. failing to conduct a reasonable reinvestigation of Plaintiff's dispute and delete or modify that information, in violation of 15 U.S.C. § 1681i, and upon information and belief, failing to perform certain other related duties pursuant to and in violation of that same provision; and

    b. failing to maintain procedures to ensure the maximum possible accuracy of the information it reported about Plaintiff, in violation of 15 U.S.C. § 1681e(b).

12. As a direct and proximate result of the Defendants' negligent and willful actions, conduct, and omissions including, upon information and belief, publishing inaccurate derogatory information to third-parties, Plaintiff suffered cognizable actual damages (both economic and non-economic) including but not limited to damage to his reputation, loss of business opportunities, delay of a vehicle purchase opportunity, emotional distress, embarrassment, aggravation, and frustration.

13. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

## JURISDICTION AND VENUE

14. The Court has jurisdiction pursuant to 15 U.S.C. § 1681p, § 1640(e) and 28 U.S.C. § 1331.

15. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. § 2201.

16. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff maintains a residence in this District, Defendant regularly conducts business here and many of

the acts and omissions at issue in this lawsuit occurred here.

## PARTIES

17. Plaintiff Jim Cheng is a natural person and a lawful permanent resident of the United States.

18. Mr. Cheng maintains a residence in Flushing, New York.

19. Plaintiff is an individual and "consumer" within the meaning of the FCRA, 15 U.S.C. § 1681a(c), as well as the NY FCRA, NY GBL § 380-a(b).

20. Equifax Information Services LLC ("Equifax") is a Georgia limited liability company, duly authorized and qualified to do business in the State of New York.

21. Experian Information Solutions, Inc. ("Experian") is an Ohio corporation, duly authorized and qualified to do business in the State of New York.

22. Trans Union, LLC ("Trans Union") is a Delaware limited liability company, duly authorized and qualified to do business in the State of New York.

23. Equifax, Experian, and Trans Union are each a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and NY FCRA (G.B.L. § 380-a(e)).

24. JPMorgan Chase Bank, N.A. ("Chase" or "Furnisher Defendant") is a national bank authorized to do business in the state of New York.

25. Chase was, at all times relevant to this Complaint, a "creditor" as defined by 15 U.S.C. § 1602(g) and a "furnisher of information" within the meaning of the FCRA, 15 U.S.C. § 1681s-2 *et seq.*

## FACTS

26. On August 25, 2019, while in Flushing, New York, Plaintiff placed an online order with the Vendor for a sandwich totaling $5.33.

27. Plaintiff used his Chase Freedom credit card ending in 4141 to pay for the order.

28. After applying a $5.00 off coupon for the order, the net charge to Plaintiff's credit card should have been $0.33.

29. A few days later, Plaintiff reviewed his credit card account online and saw the charge for the Purchase was $675.60, which is $675.27 more than the charge should have been.

30. Plaintiff immediately contacted the Vendor, which verified that the total charged was $5.33, the proper amount before the coupon.

31. A few days later, Plaintiff filed a dispute with Chase for the difference of $675.27 and submitted the online order confirmation to support his claim.

32. Chase provisionally credited Plaintiff's account for the disputed amount.

33. On or about October 2, 2019, Chase sent a letter to Plaintiff at his Queens address denying his dispute.

34. The supporting evidence which Chase included with its own October 2, 2019 letter to Plaintiff shows that the proper charge should have been $5.33.

35. After receiving this letter, Plaintiff called Chase Customer Service many times, spending approximately an hour on each call, and escalating the matter to a supervisor.

36. The supervisor instructed Plaintiff to write another dispute letter to Chase.

37. On October 15, 2019, Plaintiff resubmitted the dispute to Chase.

38. On or about October 16, 2019, Chase responded to Plaintiff at his Queens address, rejecting the continuation of the dispute.

39. On or about October 18, 2019, Chase sent a letter to Plaintiff stating that it had closed the dispute.

40. Plaintiff then filed a complaint with the Consumer Financial Protection Bureau

and New York State Attorney General's Office, who then forwarded the complaints to Chase.

41. On or about December 11, 2019, Plaintiff received a call from Kristy at Chase Card Executive Office indicating that she had called the Vendor and that the Vendor had originally overcharged Plaintiff and subsequently issued a credit to offset the overcharge.

42. Kristy asked Plaintiff at that time if he received a credit in the form of a gift card or a credit to his account with the Vendor.

43. Plaintiff told Kristy that he did not receive a credit in any form and that he expected it to be credited back to his original method of payment, *i.e.* the Chase Freedom credit card.

44. On January 3, 2020, Plaintiff contacted the Vendor and was informed by Mike Nunes verbally and later in writing that the Vendor did not overcharge him as Chase had claimed, but rather only charged him the original $5.33.

45. On January 3, 2020, Kristy from Chase called Plaintiff again and offered to credit him the Overcharge as a courtesy in exchange for acceptance of a form 1099 from Chase for the Overcharge amount.

46. Plaintiff refused this offer, because a 1099 in that amount could be treated as income to Plaintiff.

47. In a January 17, 2020 letter, Chase changed its story and claimed that the Vendor had refunded the Overcharge to Plaintiff using PayPal and again stated that it would not issue a credit as a "courtesy" because Plaintiff would not agree to issuance of a 1099.

48. Contrary to Chase's January 17, 2020 letter, Plaintiff did not receive a refund from the Vendor through PayPal. To date, he has not received a refund for the Overcharge from any source.

49. Since January 2020, Chase has reported the disputed amount to the credit reporting agencies and Plaintiff's credit score immediately dropped from 823 to the low 600s.

50. The poor credit score has caused significant loss to Plaintiff, as he was engaged in business opportunities that could not proceed due to his subpar credit score and he has postponed financing the purchase of a vehicle because the applicable interest rate on the loan will be much higher.

## Equifax

51. In or about January 2020, Plaintiff reviewed his summary Equifax credit report online and discovered Equifax's incorrect reporting of details related to his Chase account.

52. Specifically, and without limitation, the Chase tradeline was reported as including the Overcharge and reporting that Mr. Cheng had failed to make at least one payment timely.

53. On February 7, 2020, Plaintiff disputed the inaccurate information using Equifax's online dispute tool and, in support of his dispute, uploaded a detailed statement concerning the Overcharge, an order confirmation showing the correct amount of the charge as $5.33, an email confirmation from the Vendor confirming the correct amount of the charge as $5.33, and documents from Chase showing the correct amount of the charge as $5.33 ("Supporting Documents").

54. On February 14, 2020, Equifax wrote to Plaintiff stating that Equifax had verified that the disputed information was accurate and would not be deleted.

## Experian

55. On December 20, 2019, Plaintiff received an email notification from Experian stating that his credit score had decreased.

56. In early January 2020, Plaintiff reviewed his Experian credit report online and discovered Experian's incorrect reporting of details related to his Chase account.

57. Specifically, and without limitation, the Chase tradeline was reported as including the Overcharge and reporting that Mr. Cheng had failed to make at least payment timely.

58. On January 9, 2020, Plaintiff called Experian and filed a dispute telephonically.

59. On January 17, 2020, Experian wrote to Plaintiff stating that Experian had verified that the disputed information was accurate and would not be deleted.

60. On February 4, 2020, Plaintiff called Experian, discussed the dispute, and requested a full credit report.

61. An Experian representative and then a supervisor told Plaintiff that Experian could do nothing further, but that Plaintiff could file another dispute using Experian's online dispute tool and upload documents supporting his dispute.

62. On February 4, 2020, Plaintiff tried to file a second dispute online as Experian instructed, but Experian's online dispute tool would not allow Plaintiff to submit his dispute online or submit the Supporting Documents.

63. To date, Plaintiff has not received the credit report the Experian representative supposedly ordered at Plaintiff's request.

64. On February 13, 2020, Plaintiff received another email notification from Experian that his credit score had decreased further.

65. Experian continues to report the inaccurate information.

### Trans Union

66. In December of 2019 or early January 2020, Plaintiff reviewed a summary of his Trans Union credit report online and discovered Trans Union's inaccurate reporting of details

related to his Chase account.

67. Specifically, and without limitation, the Chase tradeline was reported as including the Overcharge and reporting that Mr. Cheng owed a past due balance.

68. In early January 2020, Plaintiff filed a dispute telephonically with Trans Union concerning the inaccurate information.

69. On January 18, 2020, Trans Union responded to Plaintiff's dispute stating that Trans Union had verified that the disputed information related to Plaintiff's Chase account was accurate and would not be deleted.

70. On January 31, 2020, Plaintiff submitted a dispute using Trans Union's online dispute tool and uploaded documents the Supporting Documents.

71. Trans Union did not respond to Plaintiff's January 31, 2020 dispute.

72. Plaintiff contacted Trans Union telephonically and spoke with three different agents.

73. Ultimately, Plaintiff spoke with a supervisor named Mr. David Black who explained that Trans Union relies solely upon information provided by the Furnisher and that Trans Union would not correct the inaccurate information.

## FIRST CLAIM FOR RELIEF
### FAIR CREDIT BILLING ACT ("FCBA"), 15 USC § 1666, *et seq*.
### Against the Furnisher Defendant

74. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

75. Chase did not conduct a reasonable investigation of the Overcharge.

76. The amount charged by Chase is inconsistent with the item that the Plaintiff purchased.

9

77. The Vendor has provided Chase with evidence indicating that the amount of the Overcharge is grossly inflated and inaccurate.

78. In short, any reasonable investigation of the Overcharge would have resulted in its permanent removal from Plaintiff's account.

79. Chase's actions and omissions as set forth above constitute violations of the FCBA. These violations include, without limitation:

   a. Unlawfully charging Plaintiff for the Overcharge;

   b. Failing to adequately investigate the dispute and correct Plaintiff's bill by permanently reversing the Overcharge;

   c. Failing to send to Plaintiff any reasonable explanation or clarification, setting forth valid reasons why Chase believes Plaintiff is liable for the Overcharge in light of the contrary evidence he and the Vendor had provided; and

   d. Failing to cease billing and collection activity upon notification by Plaintiff that the account was disputed, including the wrongful imposition of late fees and interest.

80. As a result of Chase's violations of the FCBA, Plaintiff is entitled to actual damages, statutory damages, declaratory judgment that Chase has violated the statute, reasonable attorneys' fees, and costs.

81. As a result of Chase's violations of the FCBA, Plaintiff suffered actual damages including but not limited to: incurring a debt that is not actually owed; loss of credit, loss of business opportunities, delay of a vehicle purchase opportunity, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

**SECOND CLAIM FOR RELIEF**
**TRUTH IN LENDING ACT, 15 U.S.C. §§ 1601,** *et seq.*
**Against the Furnisher Defendant**

82. Plaintiff repeats and re-alleges and incorporates by reference the foregoing

paragraphs.

83. Pursuant to 15 U.S.C. § 1643, a "cardholder" such as Plaintiff is liable for the unauthorized use of a credit card only if, among other things, "the liability is not in excess of $50." 15 U.S.C. § 1643(a)(1)(B).

84. The Overcharge to Plaintiff's card, in the amount of $675.27, exceeds $50.

85. Though Plaintiff is not liable for the Overcharge under 15 U.S.C. § 1643, Chase has unlawfully attempted to hold Plaintiff responsible for the Overcharge.

86. As a result of Chase's violations of TILA, Plaintiff is entitled to actual damages, statutory damages, declaratory judgment that Chase has violated the statute, and reasonable attorneys' fees, and costs.

87. As a result of Chase's violations of TILA, incurring a debt that is not actually owed; loss of credit, loss of business opportunities, delay of a vehicle purchase opportunity, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

## THIRD CLAIM FOR RELIEF
### NYGBL § 349 (Deceptive Acts and Practices)
### Against the Furnisher Defendant

88. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

89. In the course of its dealings with Plaintiff, Chase has engaged in deceptive conduct in the conduct of business, trade, commerce, or the furnishing of a service in this state, which constitutes a violation of NY GBL § 349 independent of whether Chase's conduct violated any other law.

90. Specifically, but without limitation, Chase's deceptive conduct included:

  a. Unlawfully overcharging Plaintiff;

  b. Failing to adequately investigate the dispute and correct Plaintiff's bill by permanently reversing the Overcharge, while falsely claiming to have done an adequate investigation; and

  c. Attempting to bill and collect on sums not owed (and regarding which any reasonable investigation would have determined were not owed).

  91. Chase's conduct as alleged herein is "consumer oriented." Indeed, far from a "one shot transaction," Defendant deals with a large volume of customers who dispute overcharges.

  92. Chase's failure to conduct a true "reasonable investigation" leads to consumers being forced to pay for overcharges or face the specter of litigation and/or ruined credit.

  93. Chase's misconduct as set forth above is part of a recurring policy and practice and has the potential to be repeated with regard to a large number of consumers.

  94. Each of these deceptive acts and practices is one that has a broad impact on consumers.

  95. As a result of these violations of NY GBL § 349, Plaintiff has suffered actual damages and is entitled to actual and/or statutory damages, punitive damages, declaratory judgment that Chase has violated the statute, reasonable attorneys' fees, and costs.

  96. As a result of these violations of NY GBL § 349, Plaintiff has suffered actual damages including incurring a debt that is not actually owed; loss of credit, loss of business opportunities, delay of a vehicle purchase opportunity, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

**FOURTH CLAIM FOR RELIEF**
**Declaratory Judgment**
**Against the Furnisher Defendant**

  97. Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

98. Given Chase's continued demand that Plaintiff pay the Overcharge and its reporting of incorrect information to credit reporting agencies, Chase's conduct has created a real and reasonable apprehension of liability on Plaintiff's part.

99. Chase's conduct constitutes a course of conduct that has brought Plaintiff into adversarial conflict with Chase.

100. Plaintiff did not authorize the disputed amount and therefore does not owe Chase the amount of the Overcharge.

101. Plaintiff is entitled to and hereby seeks a declaratory judgment that he is not liable for the charge in question.

## FIFTH CAUSE OF ACTION
### VIOLATIONS OF FCRA § 1681s-2(b)
**Against the Furnisher Defendant**

102. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

103. The Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by its acts and omissions, including, but not limited to:

   a. failing to conduct a reasonable investigation of Plaintiff's dispute;

   b. failing to review all relevant information provided by consumer reporting agencies; and,

   c. failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of § 1681s-2(b)(1).

104. As a result of the Furnisher Defendant's violations of § 1681s-2(b)(1), Plaintiff suffered actual damages including but not limited to: loss of credit, loss of business

opportunities, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

105. These violations of 15 U.S.C. § 1681s-2(b)(1) were willful, rendering the Furnisher Defendant liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

106. In the alternative, the Furnisher Defendant was negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

## SIXTH CAUSE OF ACTION
### VIOLATIONS OF FCRA § 1681e(b) and § 1681i
### Against the CRA Defendants

107. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

108. Congress enshrined within the FCRA the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

109. Congress stated plainly the purpose of the FCRA, namely "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b).

110. The CRA Defendants each violated multiple sections of 15 U.S.C. § 1681i by their acts and omissions including but not limited to:

    a. failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the items from Plaintiff's credit file in violation of § 1681i(a)(1);

    b. by failing to review and consider all relevant information submitted by Plaintiff in violation of § 1681i(a)(4); and

    c. by failing to properly delete the disputed inaccurate items of information from Plaintiff's credit files or modify items of information upon a lawful reinvestigation in violation of § 1681i(a)(5).

111. Each of the CRA Defendants violated 15 U.S.C. § 1681e(b) by their conduct, acts and omissions including but not limited to failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of his credit reports and credit files that they published and maintained.

112. As a result of the CRA Defendants' violations of 15 U.S.C. § 1681i and § 1681e(b), Plaintiff suffered actual damages including but not limited to: loss of credit, loss of business opportunities, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

113. These violations of 15 U.S.C. § 1681i and § 1681e(b) were willful, rendering the CRA Defendants liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

114. In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF NY FCRA § 380-f and § 380-j
### Against the CRA Defendants

115. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

116. Each of the CRA Defendants violated multiple sections of the NY FCRA (NY GBL § 380 *et seq.*) by their acts and omissions including:

    a. failing to promptly reinvestigate Plaintiff's dispute to determine whether the disputed information is inaccurate and record the current status of the disputed information in violation of NY GBL § 380-f(a);

    b. failing, after determining that the disputed information is in error or that it can no longer be verified, to promptly expunge the item and otherwise correct the file and refrain from reporting the item in subsequent consumer reports, in violation of NY GBL § 380-f(b); and

    c. failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of his credit report and credit files that it published and maintained in violation of NY GBL § 380-j(e).

117. These violations of NY GBL § 380-f and § 380-j(e) were willful, rendering the CRA Defendants liable for actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to NY GBL § 380-l and entitling Plaintiff to injunctive relief restraining Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

118. In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover actual damages and costs and reasonable attorney's fees pursuant to NY GBL § 380-m as well as injunctive relief restraining Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

119. As a result of these violations of § 380-f and § 380-j(e), Plaintiff has suffered actual damages including loss of credit, damage to reputation, loss of business opportunities, delay of a vehicle purchase opportunity, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

**WHEREFORE**, Plaintiff seeks judgment in his favor and damages against Defendants:

A. awarding Plaintiff actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees;

B. ordering the CRA Defendants:

    a. to immediately correct all inaccurate information from Plaintiff's credit reports and files, to cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and

    b. to send updated and corrected credit report information to all persons and entities to whom they have reported inaccurate information about Plaintiff within the last four years;

C. enjoining the CRA Defendants from violating Plaintiff's NY FCRA rights;

D. entering a declaratory judgment that Plaintiff is not liable for the charges in question; and

E. such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Mr. Cheng demands a trial by jury as to all issues so triable.

Dated: March 31, 2020.

Respectfully submitted,

*/s/ Daniel A. Schlanger*
Daniel A. Schlanger
Schlanger Law Group LLP
9 East 40th Street, Suite 1300
New York, NY 10016
T: 212.500.6114
F: 646.612.7996
E: dschlanger@consumerprotection.net

*Attorneys for Plaintiff Jim Cheng*